UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN M BREIMON,

        Petitioner,

v.

JEFFREY A UTTECHT,

        Respondent.

CASE NO. C12-5230 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JULY 27, 2012

    The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge, J. Richard Creatura. The authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.

    Petitioner presents one properly exhausted ground for relief -- that petitioner's trial counsel was ineffective in failing to object to improper impeachment evidence (ECF No. 6, page 7). Petitioner's other grounds for relief were not properly exhausted and are now procedurally barred. The only properly exhausted ground for relief, regarding ineffective assistance of counsel, does not warrant relief because the decision of the state court does not violate clearly

established federal law. See, 28 U.S.C. § 2254 (d) (1). Therefore, the Court recommends that this petition be denied in total.

## BASIS FOR CUSTODY AND FACTS

A Clark County jury found petitioner guilty of second degree assault-domestic violence and making death threats (ECF No. 18, Exhibit 1). The judgment and sentence contains a scrivener's error indicating that petitioner pled guilty (ECF No. 18, Exhibit 1, page 1).

Petitioner was sentenced to sixty-five months of incarceration and he has now served that sentence (ECF No. 17). Petitioner signed his petition one month before the sentence expired. If a petitioner is in custody at the time the petition is filed, jurisdiction attaches and subsequent release does not generally moot the petition because of collateral consequences that attach to a criminal conviction. See Carafas v. La Vallee, 391 U.S. 234, 237-38 (1968).

The Washington State Court of Appeals summarized the facts surrounding the crime:

### A. Victim's Statement to Deputy

On July 5, 2008, Sonia Johnson called Clark County law enforcement and reported that her boyfriend, Kevin Breimon, had injured and threatened her. That same day, Clark County Deputy Sheriff Jeremy Brown contacted Johnson at her ex-husband's house, where Johnson had gone because she was afraid of Breimon. Johnson told Brown that Breimon had assaulted her twice in her home. Johnson was upset, crying, 'very shaken up', and appeared fearful.

Brown also noted Johnson's several injuries, which had occurred during the altercations with Breimon. These injuries included: (1) abrasions on her calf and right wrist, (2) bruising to her left shoulder/bicep area, and (3) an obviously swollen finger. Johnson told Brown that Breimon had bent her finger back until it popped. During his contact with Johnson, Brown did not note any indications that Johnson might have been drinking.

### B. Smith Affidavit

Brown had Johnson complete a Smith Affidavit – her written statement about the assault and harassment and her written response to numerous written questions, often annotated with additional information. Johnson stated that on July 1, she and Breimon had been arguing. Breimon grabbed her face and squeezed it so hard she could not breathe; smashed her glasses into her face; and, after

noticing some handwriting on her hand, grabbed her finger and bent it backward "until it cracked." Johnson eventually managed to grab her keys and leave when Breimon became distracted.

On July 3, Johnson and Breimon were arguing about her ex-husband's child support payments when Breimon lunged at her, hit the table in front of her, grabbed her face, and told her she did not respect him. Johnson managed to calm Breimon by telling him that she loved him. During this altercation, Breimon threatened to kill Johnson and her ex-husband if they reunited.

Johnson was afraid to return home or to go to work because Breimon knew where she lived and worked and she was "[a]fraid of him breaking [her] doors down." Johnson's written statements were virtually identical to her oral statements to Brown. Johnson signed the affidavit under penalty of perjury.

### C. Breimon's Arrest and Statements

Because Johnson had told Brown that Breimon would likely run from law enforcement officers, Brown went to Johnson's apartment to contact Breimon with backup, including a K-9 unit. Breimon was cooperative, and Brown arrested Breimon without incident.

After Brown advised Breimon of his Miranda rights, Breimon denied knowing anything about Johnson's injuries or the details of the alleged assaults; he also denied having been verbally or physically abusive to Johnson that week. Although Brown had mentioned to Breimon that the alleged incidents had occurred that week, Brown had not told Breimon exactly when. Yet Breimon stated repeatedly, "[W]hy would she report four days later that I did this?" I Report of Proceedings (RP) at 53.

### D. Victim's Statements to Doctor Jacobson

On July 7, two days after Johnson reported the assault and after Breimon's arrest, she saw Dr. Gail Jacobson about her (Johnson's) injured finger, which X-rays revealed was fractured. Dr. Jacobson found Johnson to be quiet and reluctant to talk about the incident. But she did tell Dr. Jacobson that she had injured her finger when "her boyfriend grabbed her finger and pulled backwards, hyperextending it." I RP at 26. Johnson did not, however, explain why she had waited several days to report the injury.

Dr. Jacobson believed that although there were many ways this injury could have occurred, the injury was consistent with Johnson's explanation. Dr. Jacobson saw no external injuries on Johnson's finger. During her contact with Johnson, Dr. Jacobson did not notice the smell of any intoxicants.

## II. Procedure

The State charged Breimon with second degree assault/domestic violence and felony harassment (death threat) / domestic violence. Before trial, Johnson informed the State that she intended to recant her prior statements to Brown and

REPORT AND RECOMMENDATION - 3

Dr. Jacobson, asserting that (1) Breimon had not assaulted or threatened her, and (2) she had injured her finger by shutting it in a car door.

A. State's Evidence

At trial, the State presented testimony from Dr. Jacobson, Brown, Johnson, Johnson's friend Stacy Dunn, and victim advocate Amy Harlan.

1. Dr. Jacobson's testimony

Dr. Jacobson testified as described above. Over Breimon's hearsay objections, the trial court admitted Dr. Jacobson's testimony about Jonson's explanation of how she had injured her finger, as statements made for the purpose of medical diagnosis or treatment.

2. Deputy Brown's testimony

Before the State called Brown, and outside the jury's presence, the State raised an issue about the order of testimony. The prosecutor stated, "Obviously, since my victim will be recanting, I'll be using [Deputy Brown's testimony] to impeach her." I RP at 38. The parties discussed whether the State could present Brown's impeachment testimony before Johnson testified and recanted her prior statements of the witness stand. The State asserted that it was not calling Brown solely to offer impeachment testimony. The trial court allowed the State to call Brown before the jury heard Johnson's recantation, apparently limiting this testimony to non-impeachment testimony. Breimon did not object.

On direct examination and later as a rebuttal witness, Brown testified as described above. Brown also testified about the circumstances under which Johnson had filled out the Smith affidavit.

3. Johnson's testimony

After Brown testified, the State called Johnson. Throughout her testimony, Johnson asserted that she had not wanted the case to go forward and that she did not want to be in court.

Johnson testified that (1) she was currently 36 years old; (2) she had known Breimon since she was 15; (3) they had been in a romantic relationship from the time she was 15 until she was 20; (4) they had two children, who were now 16 and 17 years old; (5) she and Breimon were apart for about 13 years, but they had since reestablished the relationship; (6) Breimon was living with her at the time of the alleged incidents even though he was not an authorized tenant; (7) her landlord had threatened her with eviction for allowing an unauthorized person to live in her apartment; (8) she (Johnson) had been afraid of Breimon during their previous relationship but was not currently afraid of him; and (9) she still loved and cared for Breimon.

Johnson admitted that she had told Brown that Breimon had assaulted, injured, and threatened her, and that she had told Dr. Jacobson that Breimon had injured her (Johnson's) finger. But Johnson claimed that her earlier statements to Brown and Dr. Jacobson and her statements in the Smith affidavit had been lies. She asserted that she had lied because she was trying to find a way to get Breimon out of her apartment in order to avoid eviction.

Johnson further asserted that (1) around the time of the alleged incidents, she had been drinking regularly; (2) she had injured her finger some time before she called the police, when she accidentally shut in a car door after reaching into the car to grab her purse; (3) this injury occurred when she was with her friend Stacy Dunn; and (4) she was drunk when she called the police, reported the assault and harassment, and completed the Smith affidavit. Over Breimon's objections, the State admitted Exhibit 7, the Smith affidavit, as substantive evidence under ER 801(d)(1)(i).

4. Stacy Dunn's testimony

Johnson's friend Stacy Dunn, testified that Johnson had called and said that she had had Breimon arrested, that she was drunk, and that she had lied to the police. Dunn corroborated that Johnson had hurt her (Johnson's) finger in Dunn's presence a few days before Breimon went to jail. Dunn further testified Johnson had said that although she (Johnson) had made up the allegations when she called the police, she was unable to recall everything she had said because she had been drunk when she called. Dunn asserted that Johnson had a serious drinking problem.

5. Amy Harlan's testimony

Amy Harlan, a victim advocate from the Domestic Violence Prosecution Center, testified that she had talked to Johnson after Johnson reported the incidents. Johnson had (1) made it clear from the start that she did not want the case to proceed, (2) stated that her statements to the police were lies, and (3) stated that she had intentionally slammed her finger in a car door in order to have an injury to report to the police. Harlan further testified that Jonson had not said that she had been with anyone when she slammed her finger in the car door and that she appeared to be fearful and reluctant to talk. Harlan clarified, however, that Johnson had said she was fearful because she had lied to the police and prosecutor "about him."

B. Defense

After the State rested its case, Breimon moved to dismiss the charges for lack of evidence. He argued that the State had presented only impeachment evidence against its own witness, Johnson. The State countered that Johnson's Smith affidavit provided sufficient substantive evidence to take the case to the jury. The trial court agreed with the State and denied Breimon's motion to dismiss.

Because the trial court had indicated that some of Breimon's numerous prior convictions might be admissible if Breimon chose to take the witness stand, Breimon chose to not testify. He presented no other witnesses.

### C. Verdict, Judgment and Sentence

The jury found Breimon guilty of second degree assault and felony harassment based on Breimon's threat to kill Johnson. The jury also returned a domestic violence special verdict on the second degree assault count, but not on the felony harassment count. Although Breimon was convicted by a jury, the judgment and sentence entered by the trial court states that Breimon had pleaded guilty to the charges.

(ECF No. 18, Exhibit 5, pages 2-8).

## PROCEDURAL HISTORY

On direct appeal petitioner's counsel raised the following grounds for relief:

A. Assignments of Error

1. The trial court improperly admitted extrinsic evidence of statements the complaining witness admitted and explained during her testimony.

2. Trial counsel's failure to object to improper impeachment evidence constituted ineffective assistance of counsel.

3. Cumulative error denied appellant a fair trial.

4. An error in the judgment and sentence must be corrected.

Issues pertaining to assignment of error

1. Appellant was charged with assault and harassment based on accusations by his ex-girlfriend. At trial, the complaining witness admitted making the accusations but explained she had lied to the sheriff's deputy. Nonetheless, the court permitted the deputy to repeat the witness's prior statements over defense objection. Where the court's erroneous evidentiary ruling unfairly prejudiced the defense by doubling the impact of the state's evidence as to the crucial issue at trial, is reversal required?

2. The state presented extrinsic evidence of a separate prior inconsistent statement by the witness without affording her an opportunity to deny or explain the statement. Where this evidence likely tipped the scales on the key issue in the case, did trial counsel's failure to object to the improper impeachment evidence constitute ineffective assistance of counsel?

3. Did the cumulative effect of these errors deny appellant a fair trial?

4. A box is checked on the Judgment and Sentence indicating that appellant's convictions are based on a guilty plea. Where appellant was actually convicted based on jury verdicts, must the error in the Judgment and Sentence be corrected.

(ECF No. 18, Exhibit 2, page 1-2).

Petitioner filed a pro se brief raising the following grounds for review:

1.     (a) The state and trial court misapplied the law and misinformed the defendant about what prior convictions would be used against him if he testified.
    (b) Whether this mistake or misinformation can be viewed as unconstitutional since it dissuaded defendant from testifying on his own behalf?

2.     (a) The trial court abused its discretion when it denied motion to dismiss and admitted document as evidence.
    (b)     (i) Whether the court should have granted motion?
        (ii) Whether introduction of document was impermissibly prejudicial or substantiate evidence.

3.     (a) Where the witness had recanted pretrial the state decision to prosecute was biased.
    (b) Did the state properly pursue charges based solely upon recanting witness?

4.     (a) The defendant received ineffective assistance of counsel at trial.
    (b) Was counsel constitutionally effective?

5.     (a) Statement that the defendant would run upon contact was unnecessary and unduly prejudicial.
    (b) Whether introduction of this evidence was prejudicial and whether counsel was ineffective for failing to object?

6.     (a) There was insufficient evidence to convict.
    (b) Whether rational trier of fact could find guilt?

7.     (a) The state shifted the burden undermined presumption of innocence and committed misconduct.
    (b) Whether the prosecutors [sic] actions merit reversal?

8.     (a) Cumulative error.
    (b) Whether all errors identified herein or in attorneys brief when viewed together justify reversal?

(ECF No. 18, Exhibit 3, pages ii-iii).

The Washington State Court of Appeals affirmed the conviction and sentence, but remanded to correct the clerical error in the judgment and sentence (ECF No. 18, Exhibit 5). This twenty-five page opinion is the only reasoned opinion for review. The remaining rulings are either denials of a petition to review that was issued without comment, or dismissals on procedural grounds that do not address the merits.

Petitioner filed a motion for discretionary review.

> 1. Breimon was charged with assault and harassment based on accusations by his ex-girlfriend. At trial, the complaining witness admitted making the accusations but explained she had lied to the sheriff's deputy. Nonetheless, the court permitted the deputy to repeat the witness's prior statements over defense objection. Where the court's erroneous evidentiary ruling unfairly prejudiced the defense by doubling the impact of the State's evidence as to the crucial issue at trial, is reversal required?
>
> 2. The State presented extrinsic evidence of a separate prior inconsistent statement by the witness without affording her an opportunity to deny or explain the statement. Where this evidence likely tipped the scales on the key issue in the case, did trial counsel's failure to object to the improper impeachment evidence constitute ineffective assistance of counsel?
>
> 3. Did the cumulative effect of these errors deny Breimon a fair trial?
>
> 4. Did trial counsel's failure to object to hearsay and to conduct a sufficient investigation deny Breimon effective assistance of counsel?
>
> 5. Was the evidence insufficient to support the convictions?
>
> 6. Did the trial court deny Breimon his constitutional right to testify?
>
> 7. Did the trial court improperly admit a witness's affidavit as substantive evidence?
>
> 8. Did prosecutorial misconduct deny Breimon a fair trial?

(ECF No. 18, Exhibit 6). The Washington State Supreme Court denied review without comment (ECF No. 18, Exhibit 7).

Petitioner filed a personal restraint petition in the Washington State Court of Appeals and raised the following grounds for relief:

Ground One

The court of appeals holding that improper admission of the deputy's testimony does not require reversal conflicts with decisions of this court and the court of appeals.

Ground Two

The court of appeal's holding that Breimon did not receive ineffective assistance of counsel conflicts with a prior decision of the court of appeals and involves a significant question of constitutional law.

Ground Three

Cumulative errors denied Breimon a fair trial.

Ground Four

Whether Breimon raised sufficient constitutional issues involving prejudice in his statement of additional grounds for review.

    1. The trial court affected the defendants[sic] decision on whether or not to testify when it threatened to mention previous assaults and violation of court orders.
        a. The defendant has a state and federal constitutional right to testify on his own behalf.
        b. The trial court erred when it informed the defendant that should he decide to testify assault offenses would be used against him.

    2. The trial court abused its discretion when it denied motion to dismiss filed at close of states evidence.

    3. The defendant received ineffective assistance of counsel.
        a. The defendant has a state and federal constitutional right to effective assistance of counsel.
        b. The defendant received ineffective assistance when counsel failed to make prompt objections thereby allowing prejudicial evidence to reach the jury's ears on multiple occasions.
        c. Counsel was ineffective for failing to object to multiple statements that the defendant would run when contacted.
        d. Counsel failed to investigate pretrial and properly inform defendant on what crimes would be used against him if he chose to testify.

    4. The trial court improperly admitted document as exhibit
     a. It was error to allow into evidence document containing leading questions and other inadmissible prejudicial evidence.
     b. Statement answering question out of context should not have been used and tends to suggest intoxication of declarant.
     c. The trial court abused its discretion when it allowed questionnaire into evidence.

    5. Actual innocence / sufficiency of the evidence to convict challenge.
     a. The state offered no evidence of assault or harassment.
     b. The states entire case relied upon recanting witnesses prior statements.
     c. The state shifted the burden to the defendant to prove his innocence and undermined the presumption of innocence.

    6. The defendant was denied fair trial when the state engaged in prosecutorial misconduct.

(ECF No. 18, Exhibit 8).

  The Washington State Court of appeals dismissed the petition holding that it had addressed all of petitioner's arguments on direct appeal and that the ends of justice would not be served by reexamination of the issues (EXF No. 18, Exhibit 10). The Washington State Court of Appeals dismissal was on procedural grounds and did not address the merits of any claim.

  Petitioner filed a motion for discretionary review and raised the following grounds for relief:

  1. Does the fact that petitioner raised the same issues on the direct appeal, bar re-raising them in a personal restraint petition where the Court on direct appeal had a record to determine the issues, but never reached the merits and petitioner supplied additional evidence in support of the issue?

  2. When a petitioner shows that he has received ineffective assistance of counsel, would the court re-examine the issue?

  3. Did cumulative errors deny Mr. Breimon a fair trial?

  4. The trial court erred in denying petitioner motion to dismiss at the end of the State's case.

  5. Did the trial court error in admitting an exhibit, which contained prejudice evidence?

6. The State failed to present sufficient evidence.

7. The defendant was denied fair trial when the State engaged in prosecutorial misconduct.

(ECF No. 18, Exhibit 11, pages 1-2).

In his motion for discretionary review petitioner also argued:

II. The court should grant review of petitioner's claim of improper admission of the deputy's testimony when criminal conviction obtained through the prosecutor's knowing use of perjured testimony violates a defendant' right to due process.
. . .
III. When a petitioner shows that he received ineffective assistance of counsel would the court re-examine the conduct.

(ECF No. 18, Exhibit 11, pages 4 and 7).

The Washington State Supreme Court denied review citing to the Washington State Court of Appeals' direct appeal decision. The Washington State Supreme Court held that to obtain relief petitioner must show that the Washington Court of Appeals decision conflicts with a decision of the Washington State Supreme Court or another court of appeals, or that the petitioner raised significant constitutional questions (ECF No. 18, Exhibit 12). The Washington State Supreme Court's decision does not address the merits of any claim.

Petitioner filed a motion to modify the Washington State Supreme Court decision denying review and the Washington State Supreme Court denied his motion (ECF No. 18, Exhibits 13 and 14).

Petitioner, in his federal habeas corpus petition, presents the court with five grounds for relief:

GROUND ONE. IMPROPER ADMISSION OF THE DEPUTY'S TESTIMONY, PROSECUTOR KNOWING USE OF PERJURED TESTIMONY.
. . .

GROUND TWO. COUNSEL'S FAILURE TO OBJECT TO IMPROPER IMPEACHMENT EVIDENCE PETITIONER EFFECTIVE REPRESENTATION [sic]

GROUND THREE: CUMULATIVE ERROR DENIED PETITIONER A FAIR TRIAL
. . .
GROUND FOUR: STATE FAILED TO PRESENT PROOF OF A CRIMINAL CHARGE BEYOND A REASONABLE DOUBT
. . .
GROUND FIVE: THE PROSECUTION'S MISCONDUCT DENIED PETITIONER A FAIR TRIAL

(ECF No. 6, pages 6-15).

## EVIDENTIARY HEARING NOT REQUIRED

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, there are no factual issues that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that an evidentiary hearing is not necessary to decide this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

1.  Failure to exhaust grounds for relief 1, 3, 4, and 5.

Respondent contends that the petition only exhausted his second ground for relief and that grounds one, three, four, and five are unexhausted and procedurally barred (ECF No. 17, page 11).

A state prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to filing a petition in federal court. As a threshold issue the court must determine

whether or not petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. § 2254 (b)(1) states, in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that:
> (A) the applicant has exhausted the remedies available in the courts of the state; or
> (B) (i) there is an absence of available state corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

To exhaust state remedies, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 275 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (*citing* Picard, 404 U.S. at 275). Petitioner must have exhausted the claim at every level of appeal in the state courts. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Duncan, 513 U.S. at 365-66 (*citing* Picard, 404 U.S. at 275 *and* Anderson v. Harless, 459 U.S. 4 (1982)). The petitioner must present the claims to the state's highest court, even if such review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Larche v. Simons, 53 F.3d 1068, 1071 (9th Cir. 1995). A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. Hudson v. Rushen, 686 F.2d 826, 830 (9th Cir. 1982), cert denied 461 U.S. 916 (1983); Shiers v. California, 333 F.2d 173, 176

(9th Cir. 1964) (petitioner failed to exhaust the claim that the state trial court improperly admitted evidence because petitioner never presented such a claim to the state court). Specifically, petitioner must apprise the state court that an alleged error is not only a violation of state law, but a violation of the Constitution. Duncan v. Henry, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trial are not enough. Gray v. Netherland, 518 U.S. 152, 162 (1996); Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999), cert. denied, 528 U.S. 1087 (2000) (petitioner's statement that the state court's cumulative errors denied him a fair trial was insufficient to specifically articulate a violation of a federal constitutional guarantee); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle petitioner to relief. Gray v. Netherland, 518 U.S. at 162-163.

Petitioner failed to exhaust his first, third, fourth, and fifth ground for relief. These grounds for relief were presented as state law claims at nearly every level of review (ECF No. 18, Exhibit 2, Exhibit 6, Exhibit 8). When the claims were presented as federal claims, it was in a procedural context where they would not be considered because the claim had been addressed on direct appeal. Petitioner must have exhausted the claim at every level of appeal in the state courts. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992).

In addition, Petitioner's fourth and fifth ground for relief, were incorporated by reference in a prior brief when petitioner's counsel filed the first motion for discretionary review (ECF No. 18, Exhibit 6, pages 13, 14). This is not a proper manner to exhaust a claim in a Washington appellate court because incorporation by reference is not allowed. Holland v. City of Tacoma, 90 Wn. App. 533, 538 (1998), *review denied*, 136 Wn. 2d 1015 (1998).

The Court concludes that grounds for relief one, three, four and five were not properly exhausted. Respondent concedes that the second ground for relief is exhausted (ECF No. 17, page 1l).

2. Procedural bar.

Petitioner has completed one full round of post conviction challenges, he has completed the direct appeal avenue and the collateral challenge avenue. Under Washington law he may not file further state challenges. See, RCW 10.73.140. Petitioner is procedurally barred from returning to state court to exhaust grounds for relief one, three, four, and five.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (*citing* Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples which may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a showing that the factual or legal basis for a claim was not reasonably available to counsel", or "ineffective assistance of counsel." McCleskey, 499 U.S. at 494 (*citing* Murray, 477 U.S. at 488).

Petitioner in this case cannot show cause and prejudice. The failure to exhaust the grounds for relief was petitioner's. Petitioner simply did not raise the grounds for relief as federal issues on direct appeal and he was then procedurally prevented from raising the same issue a second time.

A petitioner can show "actual innocence" if the "evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial." See ." Schlup v Delo, 513 U.S. 298, 316 (1995). "The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. 298, 329 (1995). Given the "Smith Affidavit" that was admitted as substantive evidence in this case, a claim of actual innocence is not available. This affidavit, if believed by the jury, contains all the evidence needed to convict petitioner.

Grounds for relief one, three, four and five, are procedurally defaulted. The Court recommends these ground for relief be dismissed as procedurally defaulted.

        3.       Ineffective assistance of counsel for failure to object to improper impeachment evidence.

The Washington State Court of Appeals adjudicated this ground for relief on the merits on direct appeal (ECF No. 18, Exhibit 5, pages 10 -13). Detective Brown's testimony was not part of this analysis because the parties had discussed his testimony before he took the stand (ECF No. 18, Exhibit 5, page 5). He testified as to the circumstances under which Johnson filled out the Smith affidavit. To the extent that the detective's testimony was about the content of Johnson's Smith affidavit, the court ruled the admission was harmless error because the information was already before the jury in the affidavit itself. The court noted that the "Smith

Affidavit" was admissible as substantive evidence (ECF No. 18, Exhibit 5, page 2 n.2). Dr. Jacobson's testimony was admissible as an exception to the hearsay rule as statements made to the doctor were made for the purpose of medical diagnosis or treatment (ECF No. 18, Exhibit 5, page 5).

This leaves the testimony of Amy Harlan. Harlan testified that Johnson had told her she intentionally slammed her finger in a car door in order to have an injury to report to the police (ECF No. 18, Exhibit 5, page 7). This directly conflicted with Johnson's and Dunn's testimony that she had accidentally shut her finger in the car door. The Washington State Court of Appeals identified the proper legal standard for an ineffective assistance of counsel claim (ECF No. 18, Exhibit 5, page 11). The court noted that petitioner had the burden of showing deficient performance and prejudice. The court concluded that on the record before it the court could not find prejudice because petitioner presented no evidence showing that Johnson would have admitted or denied making the statement.

Respondent argues that the decision of the Washington State Court of Appeals on this matter did not violate clearly established federal law. Respondent states "Respondent is not aware of a United States Supreme Court case that would hold that under the circumstances similar to the ones here, the attorney's performance prejudiced the petitioner." (ECF No. 17, page 24). This Court agrees.

28 U.S.C. § 2254 (d) (1) precludes the granting of habeas corpus relief unless the decision of the state court was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Where Supreme Court case law gives no clear answer to a question, the state court cannot have unreasonably applied clearly established federal law. Wright v. Patten 552 U.S. 120, 126 (2008). Here,

petitioner has failed to demonstrate that the state court's decision violated clearly established federal law. Therefore, the Court recommends that the petition be denied. Four of the grounds for relief are procedurally barred and the remaining claim does not warrant habeas relief.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (*citing* Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on July 27, 2012, as noted in the caption.

Dated this 27th day of June, 2012.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge